UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KITTY KNAPP, | ) | |
| | ) | |
| Plaintiff, | ) | 15 C 754 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| EVGEROS, INC., d/b/a Olympic Star Restaurant, | ) | |
| | ) | |
| Defendant. | ) | |

### Memorandum Opinion and Order

Kitty Knapp filed this suit against her former employer, Evgeros, Inc., in Illinois state court, alleging violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*., the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq*., and the Illinois Human Rights Act ("IHRA"), 775 ILCS § 5/1-101 *et seq*. Doc. 1-1. Evgeros removed the suit to federal court. Doc. 1. Now before the court are Evgeros's motion for summary judgment, Doc. 57; Evgeros's motion to strike certain exhibits that Knapp submitted in response to the summary judgment motion, Doc. 80; Knapp's motion for leave to file *instanter* a response to Evgeros's motion to strike, Doc. 90; and Knapp's motion for leave to file *instanter* an amended response to the summary judgment motion, an amended Local Rule 56.1(b)(3)(B) response to Evgeros's Local 56.1(a)(3) statement, and an amended Local Rule 56.1(b)(3)(C) statement, Doc. 86. Knapp's motion for leave to file *instanter* amended summary judgment responses is denied, Evgeros's summary judgment motion is granted, Evgeros's motion to strike is denied as moot, and Knapp's motion for leave to file *instanter* a response to the motion to strike is denied as moot as well.

## Background

### A.    Knapp's Motions for Leave to File *Instanter* and Evgeros's Motion to Strike

Evgeros moved for summary judgment on March 31, 2016, and the court set a briefing schedule requiring Knapp to respond by May 13, 2016. Docs. 57, 61. At 11:57 p.m. on May 13, Knapp moved for an extension of time to file her summary judgment response. Doc. 64. The court granted the extension and set a new briefing schedule requiring Knapp to respond by June 3, 2016, but it warned that she would "receive no further extensions absent extraordinary circumstances." Doc. 66.

June 3 came around, but instead of filing her response, Knapp again moved for an extension—this time at 11:53 p.m. Doc. 67. Again, the court granted the motion, pushing Knapp's deadline back to June 6, 2016, and again it warned that she would "receive no further extensions absent extraordinary circumstances." Doc. 69. Knapp missed the June 6 deadline as well, but this time waited until June 9 even to ask for her third extension. Doc. 72. Even so, the court granted the extension and set yet another briefing schedule, this time requiring Knapp to respond by June 14, 2016, and requiring Evgeros to reply by June 28, 2016. Doc. 74. The court also warned Knapp that "[n]o further extensions for the response papers will be granted." *Ibid*.

Knapp filed her summary judgment response on June 14, including a brief opposing summary judgment, a Local Rule 56.1(b)(3)(B) response to Evgeros's Local Rule 56.1(a)(3) statement, and a Local Rule 56.1(b)(3)(C) statement. Docs. 75-76. Those filings were defective in various ways. For one, Knapp's Local Rule 56.1(b)(3)(C) statement at times cited whole deposition transcripts without specifying page or line numbers. Doc. 75 at 3-4 ¶ 13; *see Packer v. Trs. of Ind. Univ. Sch. of Med.*, 800 F.3d 843, 850 (7th Cir. 2015) ("It is not the court's role or obligation to read an entire deposition or affidavit in an effort to locate the particular testimony a

party might be relying on; the court ought to *know* what portion of a witness's testimony the

party is invoking so that it can focus its attention on that testimony and assess whether it is

admissible and actually supports the fact or inference for which it is cited."); *Ammons v.

Aramark Uniform Servs., Inc.*, 368 F.3d 809, 817-18 (7th Cir. 2004) (affirming the district

court's decision to disregard Local Rule 56.1 responses on the ground that they "cited an entire

deposition transcript rather than specific page references"). Knapp also attached materials that

her papers did not cite at all, and her brief contained no citations to the record, to her Local Rule

56.1(b)(3)(B) response, or to her Local Rule 56.1(b)(3)(C) statement. Docs. 76, 79.

The court held a hearing on June 23, 2016, five days before Evgeros's summary

judgment reply was due. Evgeros had moved to strike five exhibits attached to Knapp's

response. Doc. 80. The court entered and continued that motion, noting:

> I know the defendant's probably thinking, well, how can I reply [in support of
> the summary judgment motion] when I don't know whether these exhibits are
> going to be stricken. And my answer to you is this: There's no need to
> address exhibits that are not referenced in either the brief, the plaintiff's
> 56.1(b)(3)(B) response to your 56.1(a)(3) statement, or in the plaintiff's
> 56.1(b)(3)(C) statement of additional facts.
>
> And I'll go further by saying that unless there's a page number to a deposition
> that is referenced in any of those papers, you don't have to respond to
> anything having to do with that deposition. So, if it just says "Smith
> deposition," no pages, you don't have to respond to that. Because it's a
> party's obligation—and the Seventh Circuit has been clear time and again on
> this—it's a party's obligation to not just cite an entire deposition transcript
> and make the other party and the judge page through the whole deposition
> transcript, you actually have to cite page numbers. So, you don't have to
> respond to anything—any of the matters that I've just referenced.

On June 28, 2016, the day that Evgeros's reply was due, Knapp filed two documents

purporting to be "corrected" versions of her summary judgment response brief, Local Rule

56.1(b)(3)(B) response, and Local Rule 56.1(b)(3)(C) statement. Docs. 83-84. The court

immediately struck both filings on the ground that they were untimely and that Knapp had filed

them without seeking leave of the court.  Doc. 85.  Later that day, Knapp moved for leave to file *instanter* the same two documents.  Doc. 86.  That motion is now before the court.

It is best to consider Knapp's motion for leave to file *instanter* amended summary judgment response papers as a request for another extension of time to file her summary judgment responses.  *See Keeton v. Morningstar, Inc.*, 667 F.3d 877, 883 (7th Cir. 2012) (treating a late motion for leave to file *instanter* a summary judgment response as a motion to extend the deadline for filing the response).  Rule 6(b)(1)(B) provides that when a party moves to extend a deadline that has already passed, the court should deny the motion unless the movant can show that her failure to meet the deadline was the result of "excusable neglect."  Fed. R. Civ. P. 6(b)(1)(B); *see Hassebrock v. Bernhoft*, 815 F.3d 334, 341 (7th Cir. 2016) ("Rule 6 provides that when a request for extension of time is made *after* an expired deadline, 'the court may, for good cause, extend the time … if the party failed to act because of excusable neglect.'").  The determination whether a party's neglect is excusable is "at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission."  *Pioneer Inv. Servs. Co. v. Brunswick Assocs. L.P.*, 507 U.S. 380, 395 (1993) (interpreting a parallel provision of the Federal Rules of Bankruptcy Procedure); *see also Flint v. City of Belvidere*, 791 F.3d 764, 768 (7th Cir. 2015) (applying *Pioneer*'s definition of "excusable neglect" to Civil Rule 6(b)(1)(B)); *Global Tech. & Trading, Inc. v. Tech Mahindra Ltd.*, 789 F.3d 730, 732 (7th Cir. 2015) (same); *Raymond v. Ameritech Corp.*, 442 F.3d 600, 606 (7th Cir. 2006) ("We have held that *Pioneer* applies whenever 'excusable neglect' appears in the federal procedural rules.").  Relevant circumstances include "the danger of prejudice to the [non-movant], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith."

*Pioneer*, 507 U.S. at 395; *see also Peters v. Wal-Mart Stores E., LP*, 512 F. App'x 622, 628 (7th Cir. 2013); *Raymond*, 442 F.3d at 606. The "[m]ost important" of those factors is "the reason for the delay"; if the moving party fails to demonstrate "genuine ambiguity or confusion about the scope or application of the rules or some other good reason for missing the deadline," she cannot establish excusable neglect, regardless of how short the delay was or how little it prejudiced the opposing party. *Satkar Hospitality, Inc. v. Fox Television Holdings*, 767 F.3d 701, 707 (7th Cir. 2014). A party is "accountable for the acts and omissions of [her] attorneys." *Pioneer*, 507 U.S. at 396-97; *see also Moje v. Fed. Hockey League, LLC*, 792 F.3d 756, 758 (7th Cir. 2015) ("[A] lawyer's errors are imputed to the client for the purpose of [excusable neglect].").

Knapp has not shown that her delay was the result of excusable neglect; her motion states only that her attorney, Jason Craddock, "noticed" various errors in the original response papers. Doc. 86 at ¶¶ 2-4. That Craddock simply took too long to notice the mistakes in her original filings is a weak enough excuse by itself, but it is actually no excuse at all given that the court identified the mistakes in open court, with Craddock present, on June 23, five days earlier. Yet instead of taking immediate action on June 23 or perhaps the next day, Knapp waited a full five days to clean up the mess, until the very day Evgeros was to file its reply. Because Knapp has not demonstrated any "genuine ambiguity or confusion about the scope or application of the rules" or any "other good reason for missing the deadline," she cannot establish excusable neglect. *Satkar Hospitality*, 767 F.3d at 707.

The fact that Knapp offers no excuse by itself establishes that the court should deny her motion. Still, for the sake of completeness, it is worth pointing out that the other *Pioneer* factors do her no help either. The first *Pioneer* factor is danger of prejudice to the non-movant. Knapp insists that allowing her late filings will not prejudice Evgeros, and in fact will actually "make it

easier for [Evgeros] to reply to Plaintiff's response." Doc. 86. Maybe that would have been true if Knapp had filed her motion earlier—say, on June 23, the day that Craddock was warned that Knapp's response papers were deficient, or perhaps a day later. Then Evgeros would have had time to take Knapp's new filings into account when preparing its reply. But instead, Knapp waited until the day that the reply was due, with the result that Evgeros wrote a reply to the filings that she now hopes to amend. Granting Knapp's motion would force Evgeros to spend time and money writing yet another reply. Knapp's delay has prejudiced Evgeros.

The second *Pioneer* factor—"the length of the delay and its potential impact on judicial proceedings"—also weighs against Knapp. She inexcusably waited five days to attempt to fix her deficient response papers, and allowing her to file her amended response on the day Evgeros's reply was due would have pushed back the schedule even further than it had already been pushed. The fourth factor—whether the movant acted in good faith—weighs against Knapp as well. Inattention is not a new problem for Knapp and her counsel in this case. Craddock twice failed to appear for status hearings. Docs. 28, 44. Evgeros had to file a motion to compel discovery when one of Knapp's designated witnesses, June Miller—who also happened to be a client of Craddock's in a related suit against Evgeros—failed to appear for a noticed deposition. Doc. 36. Evgeros moved under Rule 37(a)(5) for an order requiring Knapp to pay the expenses it incurred in litigating the motion to compel; Knapp missed the first deadline to respond to the motion, the magistrate judge granted Knapp's retroactive motion for an extension, and then Knapp missed the second deadline as well. Docs. 46, 48, 50, 55, 62. As noted, the court extended the summary judgment response deadline three times—twice as the result of requests made at the eleventh hour, and once as the result of a request made three days after the deadline had passed. Docs. 66, 69, 74. Knapp also blew the deadline to file a response

to Evgeros's motion to strike; Knapp's motion for leave to file the untimely response *instanter* asserts that Craddock was unable to file the response on time because he had to "retrieve a lost wallet."  Docs. 82, 90.

The court is done accommodating Knapp's disdain for and/or inexcusable inability to abide by the schedule, particularly given the accommodations she has already received.  Knapp's motion for leave to amend her response brief and Local Rule 56.1 filings is denied.  *See Flint*, 791 F.3d at 768 ("[C]ase management depends on enforceable deadlines ….  In managing their caseloads, district courts are entitled to—indeed they must—enforce deadlines.") (internal quotation marks omitted); *Raymond v. Ameritech Corp.*, 442 F.3d 600, 605 (7th Cir. 2006) ("Rule 6(b) … clearly gives courts both the authority to establish deadlines and the discretion to enforce them."); *Reales v. Consol. Rail Corp.*, 84 F.3d 993, 996 (7th Cir. 1996) ("The district courts must manage a burgeoning caseload, and they are under pressure to do so as efficiently and speedily as they can, while still accomplishing just outcomes in every civil action. … Necessarily, they must have substantial discretion as they manage their dockets."); *Shine v. Owens-Ill., Inc.*, 979 F.2d 93, 96 (7th Cir. 1992) ("[J]udges must be able to enforce deadlines.") (internal quotation marks omitted).  Given this ruling, and the fact that the exhibits that Evgeros seeks to strike are not cited by Knapp's response papers or are otherwise immaterial, Evgeros's motion to strike is denied as moot, as is Knapp's motion for leave to file *instanter* a response to that motion.

## B.    Factual Background

Evgeros filed a Local Rule 56.1(a)(3) statement along with its summary judgment motion.  Doc. 58.  Each assertion in the Local Rule 56.1(a)(3) statement cites evidentiary material in the record and is supported by the cited material.  *See* N.D. Ill. L.R. 56.1(a) ("The

statement referred to in (3) shall consist of short numbered paragraphs, including within each paragraph specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph."). Knapp filed a response brief, a Local Rule 56.1(b)(3)(B) response to Evgeros's Local Rule 56.1(a)(3) statement, and a Local Rule 56.1(b)(3)(C) statement of additional facts. Docs. 75-76. As explained above, she moved for leave to file *instanter* amended versions of those filings, but the motion is denied. The facts are set forth as favorably to Knapp as the record and Local Rule 56.1 permit. *See Hanners v. Trent*, 674 F.3d 683, 691 (7th Cir. 2012). On summary judgment, the court must assume the truth of those facts, but does not vouch for them. *See Arroyo v. Volvo Grp. N. Am., LLC*, 805 F.3d 278, 281 (7th Cir. 2015).

Knapp worked as a waitress at the Olympic Star Restaurant from 1984 or 1985 until 2013, when she was sixty years old. Doc. 58 at ¶ 2; Doc. 58-1 at 19, p. 121, ll. 18-20; Doc. 75 at 1 ¶ 2. Evgeros acquired the Restaurant in Spring 2012. Doc. 58 at ¶ 3; Doc. 58-5 at ¶ 3; Doc. 75 at 1 ¶ 3. Gerasimos and Evagelina Garbis ("Gerry" and "Eva") are Evgeros's shareholders, and their son, Anastasios Garbis ("Taso"), was a manager at the Restaurant in 2012 and 2013. Doc. 58 at ¶¶ 4-5; Doc. 58-5 at ¶ 4; Doc. 58-6 at ¶ 5; Doc. 75 at 1 ¶¶ 4-5.

At a meeting in April 2012, before the change in ownership, Taso announced to the staff that they would all have to reapply for their jobs and that not everyone would be rehired. Doc. 58 at ¶ 7; Doc. 75 at 1 ¶ 7. He also explained that employees' hours would change and that no employee would have the same schedule week after week. Doc. 58 at ¶ 8. Citing her own deposition and Taso's declaration, Knapp denies that Taso said this. Doc. 75 at 1 ¶ 8. But the deposition plainly supports Evgeros's assertion, and the declaration says nothing that undermines it. Doc. 58-1 at 4, p. 27, ll. 18-21 ("I do know as the meeting progressed and he talked about the

hours wouldn't be the same"). There is therefore no genuine dispute of fact about whether Taso announced at the meeting that employees' hours would not be the same. *Cf. Janky v. Lake Cnty. Convention & Visitors Bureau*, 576 F.3d 356, 362 (7th Cir. 2009) ("[L]itigants cannot create sham issues of fact with affidavits that contradict their prior depositions"—and here, Knapp does not even have an affidavit) (internal quotation marks omitted). Knapp, who was at the meeting, stood up and said, "I don't want to waste your time or my time, if I can't have a set schedule this isn't going to work for me." Doc. 58 at ¶ 9; Doc. 75 at 1 ¶ 9. Despite her threat, Knapp kept working at the Restaurant for months, typically on Tuesday and Friday mornings. Doc. 58 at ¶ 23; Doc. 75 at 2 ¶ 23.

Knapp had a pinched nerve in her left elbow that prevented her from carrying large trays but that otherwise did not interfere with her work or daily activities. Doc. 58 at ¶¶ 15-17; Doc. 75 at 1-2 ¶¶ 15-17, 3 ¶ 5. In February 2013, Eva authorized Knapp to take a leave of absence so that she could have elbow surgery. Doc. 58 at ¶ 18; Doc. 75 at 2 ¶ 18. While Knapp was on leave, the Restaurant installed a new computer system. Doc. 58-6 at ¶ 8. In May 2013, Knapp asked to be put back on the schedule to work, but Christina Thurner, the server responsible for the schedule, told her that she had to train on the new computer system first. Doc. 58-5 at ¶ 15; Doc. 58-6 at ¶¶ 3-4, 8.

Knapp trained on the new system and then asked again to be put back to work. Doc. 58 at ¶ 28; Doc. 58-6 at ¶ 9; Doc. 75 at 2 ¶ 28. Knapp told Thurner that she could work only on Tuesdays and alternating Fridays, because she had agreed to look after her grandchildren on the other Fridays. Doc. 58-6 at ¶ 10. Thurner relayed Knapp's scheduling request to Taso, who instructed Thurner to take Knapp off the schedule and to tell Knapp that she had to speak with him before she would be put back on the schedule. Doc. 58-5 at ¶¶ 18-20; Doc. 58-6 at ¶ 12.

Thurner relayed Taso's message to Knapp. Doc. 58-6 at ¶ 13. Knapp then went to the restaurant and asked to speak to Gerry; when told that Gerry was unavailable, Knapp said, "I'm done. I'm going to unemployment." Doc. 58 at ¶¶ 30-31; Doc. 75 at 2 ¶¶ 30-31. She filed a claim for unemployment benefits shortly afterwards. Doc. 58 at ¶ 32; Doc. 75 at 2 ¶ 32.

**Discussion**

Knapp's complaint lists four counts. Counts I and II allege that Evgeros removed Knapp from the schedule because she had a disability, in violation of the ADA (Count I) and the IHRA's disability discrimination provisions (Count II). Counts III and IV allege that Evgeros removed Knapp from the schedule because of her age, in violation of the ADEA (Count III) and the IHRA's age discrimination provisions (Count IV).

## I. Disability Discrimination Claims

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). An ADA plaintiff must prove that she has a "disability" in order to prevail. *See Silk v. Bd. of Trs., Moraine Valley Comm. Coll.*, 795 F.3d 698, 706 (7th Cir. 2015). The ADA defines a "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities … ; (B) a record of such an impairment; or (C) being regarded as having such an impairment (as described in paragraph (3))." 42 U.S.C. § 12102(1). Paragraph (3) clarifies that an individual can be "regarded as" having a disability "whether or not the impairment limits or is perceived to limit a major life activity." *Id.* § 12102(3)(A).

Evgeros's initial brief argues that Knapp does not have a "disability" within the meaning of the ADA because the physical limitations she faced as a result of her pinched nerve were insufficiently severe and because she was not regarded as disabled. Doc. 57-1 at 6-9. Knapp's only argument in response is that a material dispute exists over "whether Defendant discriminated against Plaintiff because of her disability"; she makes no arguments responsive to the question whether she in fact has a qualifying disability to begin with. Doc. 76 at 6-7. Accordingly, Knapp has forfeited any argument that she has a "disability," and therefore has forfeited her ADA claim as a whole. *See Nichols v. Mich. City Plant Planning Dep't*, 755 F.3d 594, 600 (7th Cir. 2014) ("The non-moving party waives any arguments that were not raised in its response to the moving party's motion for summary judgment."); *G & S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 538 (7th Cir. 2012) ("We have repeatedly held that a party waives an argument by failing to make it before the district court."); *Salas v. Wis. Dep't of Corr.*, 493 F.3d 913, 924 (7th Cir. 2007) ("[A] party forfeits any argument it fails to raise in a brief opposing summary judgment.").

In any event, even if Knapp had contested the point and adduced evidence raising a genuine question about whether she has a "disability" within the meaning of the ADA, summary judgment would still be appropriate. The ADA prohibits "discriminat[ion] … on the basis of disability" in making firing decisions; it does not prohibit firing people with disabilities for reasons not pertaining to the disability. 42 U.S.C. § 12112(a). To survive summary judgment, Knapp must adduce evidence that would allow a reasonable factfinder to conclude Evgeros "took an adverse job action against her *because of her disability*." *Arroyo*, 805 F.3d at 286 (emphasis added) (internal quotation marks omitted). She has not done so.

Until very recently, Seventh Circuit precedents required district courts to apply two forms of analysis in discrimination suits, such as this one, where a defendant moves for summary judgment on the ground that the plaintiff cannot prove that her membership in a protected class caused the relevant adverse event. *See*, *e.g.*, *Chaib v. Geo Grp., Inc.*, 819 F.3d 337, 341 (7th Cir. 2016); *Carothers v. Cnty. of Cook*, 808 F.3d 1140, 1148-49 (7th Cir. 2015). First, a district court would determine whether the plaintiff had satisfied the so-called "direct method" of proof; that is, it would look to see whether the plaintiff had "present[ed] sufficient evidence, either direct or circumstantial, that the employer's discriminatory animus motivated an adverse employment action." *Harper v. Fulton Cnty.*, 748 F.3d 761, 765 (7th Cir. 2014) (internal quotation marks omitted); *see also Coleman v. Donahoe*, 667 F.3d 835, 845 (7th Cir. 2012). Second, the district court would determine whether the plaintiff had satisfied the so-called "indirect method" of proof. First described in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), the indirect method allows the plaintiff to shift the burden of proof on the question of intent to the defendant once the plaintiff makes certain showings. *See id.* at 802. Specifically, the plaintiff first has to make a *prima facie* case, showing "that (1) she is a member of a protected class; (2) she met her employer's legitimate job expectations; (3) she suffered an adverse employment action; and (4) similarly situated employees outside of the protected class received more favorable treatment." *Kuttner v. Zaruba*, 819 F.3d 970, 976 (7th Cir. 2016) (internal quotation marks omitted). If the plaintiff makes her *prima facie* case, the burden shifts to the defendant to give a non-discriminatory reason for treating the plaintiff the way it did, and if the defendant meets *its* burden, the burden shifts back to the plaintiff to show that the defendant's explanation was just a pretext. *McDonnell Douglas*, 411 U.S. at 802, 804.

That was the old way. The Seventh Circuit recently issued *Ortiz v. Werner Enterprises, Inc.*, __ F.3d __, 2016 WL 4411434 (7th Cir. Aug. 19, 2016), which rejects the distinction between the direct and indirect methods, stating that "[t]he time has come to jettison these diversions and refocus analysis on the substantive legal issue." *Id*. at *3. The substantive legal issue in *Ortiz* was "[w]hether a reasonable juror could conclude that Ortiz would have kept his job if he had a different ethnicity, and everything else had remained the same." *Ibid*. The district court appeared to have considered some evidence under the "direct method" but not under the "indirect method," and vice versa, *id.* at *2-3, and the Seventh Circuit held that to be reversible error, *id*. at *4. In the process, the Seventh Circuit explicitly overruled numerous decisions "to the extent that these opinions insist on the use of the direct-and-indirect framework." *Id*. at *5 (overruling *Andrews v. CBOCS W., Inc.*, 743 F.3d 230 (2014); *Silverman v. Bd. of Ed. of Chi.*, 637 F.3d 729 (7th Cir. 2011); *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487 (7th Cir. 2007); *Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498 (7th Cir. 2004); *Haywood v. Lucent Techs., Inc.*, 323 F.3d 524 (7th Cir. 2003); *Oest v. Ill. Dep't of Corrs.*, 240 F.3d 605 (7th Cir. 2001); *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612 (7th Cir. 2000); *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391 (7th Cir. 1997); *Mechnig v. Sears, Roebuck & Co.*, 864 F.2d 1359 (7th Cir. 1988); and *La Montagne v. Am. Convenience Prods., Inc.*, 750 F.2d 1405 (7th Cir. 1984)). *Ortiz* also explicitly overruled precedents that instructed district courts to determine under the direct method whether the plaintiff had presented a "convincing mosaic" of circumstantial evidence. *Id.* at *4 (overruling *Hatcher v. Bd. of Trs. of S. Ill. Univ.*, 2016 WL 3770555, at *6 (7th Cir. July 14, 2016); *Chaib v. Indiana*, 744 F.3d 974, 981 (7th Cir. 2014); *Cloe v. Indianapolis*, 712 F.3d 1171, 1180 (7th Cir. 2013); *Smith v. Bray*, 681 F.3d 888, 901 (7th Cir. 2012); *Good v. Univ. of Chi. Med. Ctr.*, 673 F.3d 670, 674 (7th Cir. 2012); *Silverman*, 637

F.3d at 734; *Phelan v. Cook County*, 463 F.3d 773, 779 (7th Cir. 2006); *Koszola v. Bd. of Educ. of Chicago*, 385 F.3d 1104, 1109 (7th Cir. 2004); *Rhodes*, 359 F.3d at 504; *Cerutti v. BASF Corp.*, 349 F.3d 1055, 1061 (7th Cir. 2003); *Robin v. Espo Engineering Corp.*, 200 F.3d 1081, 1088-89 (7th Cir. 2000)). *Ortiz* makes clear, though, that it does not undermine "the burden-shifting framework created by *McDonnell Douglas*," explaining:

> Today's decision does not concern *McDonnell Douglas* or any other burden-shifting framework, no matter what it is called as a shorthand. We are instead concerned about the proposition that evidence must be sorted into different piles, labeled "direct" and "indirect," that are evaluated differently. Instead, all evidence belongs in a single pile and must be evaluated as a whole. That conclusion is consistent with *McDonnell Douglas* and its successors.

*Id*. at *5.

To survive summary judgment, then, a discrimination plaintiff must present evidence that, considered as a whole, would allow a reasonable juror to conclude that the plaintiff was discriminated against due to a protected characteristic. *McDonnell Douglas* identifies one pattern that the evidence might fit that would enable a reasonable juror to find discrimination—namely, a pattern of evidence showing that the plaintiff belonged to a protected class, met her employer's legitimate expectations, suffered an adverse employment action, and was similarly situated to other employees who were not members of the protected class who were treated better, provided that the defendant fails to articulate a reasonable alternative explanation or the plaintiff shows that the proffered alternative explanation is a pretext. But the pattern identified in *McDonnell Douglas* is just one way that the record evidence could enable a reasonable juror to find discrimination. A district court must not limit its analysis to *McDonnell Douglas* or treat some evidence as relevant to the *McDonnell Douglas* analysis but not to the broader question whether "a reasonable factfinder [could] conclude that the plaintiff's race, ethnicity, sex,

religion, or other proscribed factor caused the discharge or other adverse employment action." *Id.* at *4.

Accordingly, the court will first lay out every piece of (properly of-record) evidence that weighs either way on the question whether Knapp was fired because she had a disability (assuming, for the sake of argument, that she had a disability). The court will then see if the evidence, *considered as a whole*, fits the *McDonnell Douglas* pattern; if it does, then Knapp survives summary judgment. If the evidence does not fit the *McDonnell Douglas* pattern, then the court will step back and—again, *considering the evidence as a whole*—determine whether a reasonable factfinder could conclude that Knapp was discriminated against; if so, then Knapp survives summary judgment, and if not, then not.

Here is the evidence weighing in favor of a finding that Knapp was removed from the schedule because she had a (supposed) disability. First, before Knapp's surgery, she was not able to carry large trays without the help of a busboy. Doc. 58 at ¶ 17; Doc. 75 at 2 ¶ 17, 3 ¶ 5. If carrying trays was a part of her job, then it is possible that the fact that her (supposed) disability prevented her from performing the task angered her employers, which led them to remove her from the schedule. Second, Knapp was removed from the schedule after she took a medical leave of absence to get surgery to fix her elbow. Doc. 58 at ¶¶ 18, 27-29; Doc. 75 at 2 ¶ 18, 27-29. It could be argued that the decision's timing was suspicious. *See Morgan v. SVT, LLC*, 724 F.3d 990, 998 (7th Cir. 2013) (explaining that a suspiciously timed adverse employment action can be evidence of discriminatory animus, although it is rarely sufficient evidence by itself); *Wembi v. Metro Air Serv.*, __ F. Supp. 3d __, 2016 WL 3878182, at *12-13 (N.D. Ill. July 18, 2016) (denying summary judgment on a retaliatory termination claim where

the termination followed the protected activity by days *and* where the defendant offered no explanation for why the plaintiff was terminated while other employees were not).

Here is the evidence weighing against a finding that Knapp was fired because she was disabled. Knapp was willing to work only on Tuesday and Friday mornings, even though Taso told the wait staff that they would have to have flexible schedules. Doc. 58 at ¶¶ 9, 23; Doc. 58-1 at 4, p. 27, ll. 18-21; Doc. 58-6 at ¶ 10; Doc. 75 at 1 ¶ 9, 2 ¶ 23. Knapp stood up at a staff meeting in front of management and said that she would not be able to have a flexible schedule. Doc. 58 at ¶ 9; Doc. 75 at 1 ¶ 9. Shortly before she lost her job, Knapp told Thurner that she could work only Tuesday mornings and *every other* Friday morning. Doc. 58-6 at ¶ 10. Taso told Thurner not to put Knapp back on the schedule—the action that precipitated Knapp's conclusion that she had been discharged—right after he heard that Knapp was willing to work only those mornings. Doc. 58-5 at ¶¶ 18-20; Doc. 58-6 at ¶ 12; Doc. 58-6 at ¶ 10.

As to whether Knapp satisfies her *prima facie* burden under *McDonnell Douglas*, the record shows that she was not meeting Evgeros's legitimate expectations, as her severe, self-imposed scheduling restrictions were incompatible with its requirement that the wait staff accept scheduling flexibility. Moreover, the record contains no evidence, one way or the other, about whether Evgeros treated any similarly situated non-disabled employee better than it treated Knapp. It is immediately clear, then, that Knapp has not adduced evidence sufficient to satisfy her *prima facie* burden under *McDonnell Douglas*. *See Bunn v. Khoury Enters., Inc.*, 753 F.3d 676, 685 (7th Cir. 2014) (holding that an ADA plaintiff failed to satisfy *McDonnell Douglas* in part because he "completely failed to identify, let alone discuss, a similarly situated non-disabled employee who was treated more favorably").

Although Knapp cannot forestall summary judgment under *McDonnell Douglas*, the question remains whether, more broadly and stepping outside the *McDonnell Douglas* framework, she has adduced evidence otherwise sufficient to allow a reasonable juror to conclude that she was discriminated against due to her disability. She has not. All she has are the bare facts that she (supposedly) had a disability and that she lost her job. The timing of Evgeros's decision not to put her on the work schedule might appear suspicious at first glance, but if anything it tends to show that she was *not* fired because of her elbow; after all, Knapp's elbow posed the least risk of interfering with her work in June 2013, right after she had finished recovering from surgery to fix it. Doc. 58 at ¶ 22; Doc. 75 at 2 ¶ 22. In the meantime, the evidence amply supports a different and legitimate explanation for Evgeros's decision not to put Knapp back on the schedule: Knapp's insistence on working only six specific days per month. There is undisputed evidence that it was important to Evgeros that members of its wait staff keep flexible schedules; Taso announced that fact at the staff meeting in 2012. And there is evidence that it was Knapp's limited availability that impelled Taso not to put her back on the work schedule; Taso ordered Thurner not to put Knapp on the schedule right after he heard that Knapp was interested in working only Tuesday mornings and every other Friday morning. No reasonable juror could conclude that Evgeros decided to take Knapp off the work schedule because Knapp had or appeared to have a disability, rather than because she had limited scheduling availability. Evgeros is therefore entitled to summary judgment on Knapp's ADA claim.

Evgeros's brief treats Knapp's IHRA disability claim as identical to her ADA claim, and Knapp's response brief does not argue otherwise. Doc. 57-1 at 5-11; Doc. 76 at 6-7. Accordingly, Knapp has forfeited any argument that her IHRA claim can succeed even if her

ADA claim fails. *See Nichols*, 755 F.3d at 600; *G & S Holdings*, 697 F.3d at 538; *Salas*, 493 F.3d 924. Moreover, any such argument would have failed; courts analyze IHRA disability claims for discriminatory intent the same way that they analyze ADA claims. *See Teruggi v. CIT Grp./Capital Fin., Inc.*, 709 F.3d 654, 659 (7th Cir. 2013).

## II. Age Discrimination Claims

The complaint also alleges that Evgeros intentionally discriminated against Knapp on the basis of her age by refusing to put her on the work schedule after she returned from her medical leave, in violation of the ADEA and the IHRA's age discrimination provisions. Evgeros first argues that the ADEA claim is logically inconsistent with Knapp's age discrimination claims. Citing *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167, 168 (2009), Evgeros asserts that an adverse employment action can violate the ADEA only if the plaintiff's age was "THE REASON for the discrimination, not A reason." Doc. 57-1 at 12. So, Evgeros argues, because Knapp insists that her disability was one reason that she was removed from the master schedule, her age cannot have been the *only* reason that she was removed.

That argument misunderstands *Gross*. *Gross* addressed whether the ADEA allows a so-called "mixed-motives" instruction. 557 U.S. at 169-70. In a mixed-motives case, discriminatory animus can be one of several reasons that the plaintiff was fired (or demoted, or denied a promotion, etc.). *See id.* at 171. *Gross* holds that mixed-motives cases fail under the ADEA; instead, the plaintiff's age must be a "but-for cause" of her firing (or demotion, or denial of a promotion, etc.). *Id.* at 176 (internal quotation marks omitted). In other words, the plaintiff must prove that she would not have suffered the adverse action if she were younger.

That holding is very different from the one Evgeros imagines *Gross* to have—that the plaintiff's age must be *the only* but-for cause of the adverse employment action. *See Rogers v.*

18

*Bromac Title Servs., LLC*, 755 F.3d 347, 352 (5th Cir. 2014) (affirming the district court's grant of summary judgment on a discrimination claim because, despite the plaintiff's assertions to the contrary, "the district court opinion did not interpret the but-for standard to require [the plaintiff] to show that any illegal motivation was unaccompanied by a legitimate reason"); *Leal v. McHugh*, 731 F.3d 405, 415 (5th Cir. 2013) ("[T]he district court misread *Gross*, since 'but-for cause' does not mean 'sole cause.'"); *Jones v. Okla. City Pub. Schs.*, 617 F.3d 1273, 1278 (10th Cir. 2010) ("*Gross* does not … plac[e] a heightened evidentiary requirement on ADEA plaintiffs to prove that age was the sole cause of the adverse employment action."). *Gross* says nothing to endorse Evgeros's preferred rule, but the rule has another problem—it would undermine *every* ADEA claim. Every event (or, at least, every event that is relevant to the ADEA) has multiple but-for causes. A plaintiff's hiring is a but-for cause of her firing; if she had never been hired, she would never have been fired. So is her having been born, and her mother's having been born, and *her* mother's having been born, and so on. *See* Howard C. Klemme, *The Enterprise Liability Theory of Torts*, 47 U. Colo. L. Rev 153, 162 (1976) ("The problem is: no compensable tort loss is ever the 'but for' result of only one enterprise or activity. It is always the result of an infinite number of 'but for' causes or activities."). Evgeros's reading of *Gross* is not just wrong, but incoherent.

Still, Knapp has presented no minimally compelling evidence that her age was even one but-for cause of Evgeros's decision to take her off the work schedule, and so Evgeros is entitled to summary judgment. As noted, *Ortiz* requires the court to consider all of the evidence weighing one way or the other on the question whether Knapp was taken off the schedule because of her age, and in light of that evidence must decide whether a reasonable juror could find that she was. One way that the evidence might allow a reasonable juror to find that Knapp

was discriminated against because of her age is if it fits the *McDonnell Douglas* pattern—that is, if it reveals that Knapp was a member of a protected class (here, people over the age of forty), that she satisfied Evgeros's legitimate expectations, that she suffered an adverse employment action, and that other similarly situated employees under forty were treated better than she was. Again, though, that is not the *only* way that the evidence, considered as a whole, could enable a reasonable juror to find discrimination, and the court must not limit itself to the *McDonnell Douglas* framework or otherwise sort the evidence "into different piles, labeled 'direct' and 'indirect,' that are evaluated differently." *Ortiz*, 2016 WL 4411434, at *5.

So, here is all the properly of-record evidence that Evgeros decided to take Knapp off the schedule because of her age. Knapp was sixty years old in 2013, and she was taken off the schedule. Doc. 58 at ¶¶ 2, 29; Doc. 58-1 at 19, p. 121, ll. 18-20; Doc. 75 at 1-2 ¶¶ 2, 29. Knapp's Local Rule 56.1(b)(3)(C) statement insists that the Restaurant "systematically eliminated employees over 40," purports to name three other Evgeros employees who lost their jobs because of their ages, and alleges that only two of the Restaurant's current employees are over forty. Doc. 75 at 3-4 ¶ 13. But the reason that the court is using the words "insists," "purports," and "alleges" is that Knapp does not support any of her assertions with valid citations to supportive record evidence. Instead, she cites passages in her deposition and Thurner's deposition, neither of which remotely support the body of the paragraph, and she cites two other depositions without specifying page ranges. *Ibid*. That, as noted above, is as good as no citation at all. *See Packer*, 800 F.3d at 850; *Ammons*, 368 F.3d at 817-18. Accordingly, the court disregards those assertions.

The evidence that Knapp was not taken off the schedule because of her age, meanwhile, looks much like the evidence that she was not taken off the schedule because of her purported

disability. Taso announced that wait staff would have to have flexible schedules, and Knapp told him that that was unacceptable to her. Doc. 58 at ¶¶ 8-9; Doc. 58-1 at 4, p. 28, ll. 18-21; Doc. 75 at 1 ¶ 9. Knapp later told Thurner that she could work only on Tuesday mornings and every other Friday morning. Doc. 58-6 at ¶ 10. When Thurner told Taso about Knapp's scheduling constraints, Taso had Knapp taken off the master schedule. Doc. 58-5 at ¶¶ 18-20; Doc. 58-6 at ¶ 12. Again, there is undisputed evidence that Knapp, due to her scheduling inflexibility, was not meeting Evgeros's legitimate business expectations, and there is no evidence that any similarly situated younger employee was treated more favorably, as there is no evidence to indicate that any other employee had availability as restricted as Knapp's. Again, then, Knapp's evidence does not suffice under the *McDonnell Douglas* framework.

Could a reasonable juror, considering all the evidence, nevertheless conclude that Knapp was taken off the schedule because of her age? No. There is simply no evidence that could support anything beyond speculation. All that Knapp can show is that she was over forty and was taken off of Evgeros's master schedule, which is insufficient under both the ADEA and the IHRA's age discrimination provisions. *See Bennington v. Caterpillar Inc.*, 275 F.3d 654, 660 (7th Cir. 2001) (affirming summary judgment because an age discrimination plaintiff, who could point only to the adverse employment actions he suffered and to better treatment of a co-worker who was five years younger, offered no "evidence that [the defendant's] decisions were motivated by his age"); *Teruggi*, 709 F.3d at 659 (applying the same analysis to IHRA and ADEA claims on summary judgment). Evgeros therefore is entitled to summary judgment on Knapp's age discrimination claims.

**Conclusion**

For the foregoing reasons, Knapp's motion for leave to file *instanter* amended summary judgment response papers is denied, Evgeros's summary judgment motion is granted, and Evgeros's motion to strike is denied as moot, as is Knapp's motion for leave to file *instanter* a response to the motion to strike. Judgment will be entered in favor of Evgeros and against Knapp.

September 9, 2016

_____
United States District Judge